DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

|  |  |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | Criminal Action No. 2015-0018 |
| ) | |
| DAMIAN LANG, SR., ) | |
| ) | |
| Defendant. ) | |

**Attorneys:**
**Rhonda Williams-Henry, Esq.,**
**Alphonso G. Andrews, Esq.,**
St. Croix, U.S.V.I.
*For the Government*

**Yvette D. Ross-Edwards, Esq.,**
St. Croix, U.S.V.I.
*For Defendant*

## MEMORANDUM OPINION

**Lewis, Chief Judge**

THIS MATTER comes before the Court on Defendant Damian Lang, Sr.'s "Motion to Preclude Expert Testimony" filed on May 10, 2016 (Dkt. No. 76) and Defendant's "Motion to Preclude Expert Testimony of Jeff Keith" filed on May 24, 2016 (Dkt. No. 99). On May 17, 2016, the Government filed its "Response to Motion to Preclude Expert Testimony" (Dkt. No. 84) regarding Defendant's first Motion and on May 24, 2016, filed another "Response to Motion to Preclude Expert Testimony" (Dkt. No. 100) to address Defendant's second Motion. At the pretrial conference held on May 25, 2016, the parties presented oral argument regarding Defendant's Motions. For the reasons discussed below, the Court will deny both Motions.[1]

---

[1] On May 31, 2016, prior to the commencement of trial, the Court announced orally on the record that Defendant's Motions were denied, and that the opinion would be forthcoming.

## I.   BACKGROUND

On May 26, 2015, the grand jury returned an Indictment against Defendant charging the following two counts: (1) Conspiracy in violation of 18 U.S.C. § 371; and (2) Bank Robbery in violation of 18 U.S.C. § 2113(a) and 18 U.S.C. § 2. (Dkt. No. 1). The Government alleges that, at approximately 10:45 a.m. on September 2, 2014, Defendant and another individual entered the Bank of St. Croix at Gallows Bay in Christiansted wearing masks. (Dkt. No. 81 at 1). According to the Government, once inside, Defendant stole money from the tellers' drawers while his accomplice "brandished what appeared to be a handgun." (Dkt. No. 1 at 2). The Government further alleges that Defendant and his accomplice then "escaped in a vehicle, travelled a short distance to a nearby parking lot, changed vehicles and escaped with over $40,000." (Dkt. No. 81 at 1). At the time of the bank robbery, Defendant was allegedly on pretrial supervision for unrelated charges in the Superior Court of the Virgin Islands and was wearing a Global Positioning System ("GPS") ankle bracelet. (*Id.* at 3-4).

Defendant's first Motion contains an affidavit from Jennifer White of BI Incorporated in which Ms. White avers, *inter alia*, that certain maps are "an accurate representation of the GPS tracking of Damian Lang on 09/02/2013." (Dkt. No. 76-1 at 1).[2] Defendant's second Motion contains an almost identical affidavit from Jeff Keith of BI Incorporated in which Mr. Keith avers, *inter alia*, that certain maps are "an accurate representation of the GPS tracking of Damian Lang on 09/02/2014." (Dkt. No. 99-1 at 1). Except for the identity of the two affiants, Defendant's Motions are substantially identical in that they both seek to preclude the attached affidavit, "any testimony by [affiant] as an expert, or any other unknown expert." (Dkt. No. 76 at 1; Dkt. No. 99

---

[2] Because the bank robbery occurred on September 2, 2014, it appears that the reference to September 2, 2013, is a scrivener's error.

2

at 1-2). Likewise, the Responses filed by the Government addressing Defendant's Motions appear to be identical.

In both of his Motions, Defendant asserts that he "anticipates that the Government will attempt to offer expert testimony on the accurateness and operation of the electronic monitoring system" used to track Defendant, and seeks to preclude such expert testimony. (Dkt. No. 76 at 1; Dkt. No. 99 at 1). Defendant bases his requested relief on two grounds. First, Defendant argues that the Government failed to provide the requisite notice regarding expert testimony, and any notice at this stage in the proceeding would be untimely as Defendant would essentially be "denied a similar opportunity to respond with his expert." (Dkt. No. 76 at 2; Dkt. No. 99 at 2). Second, Defendant argues that the Government has failed to provide information regarding the methodology of the electronic tracking data and, based on the affidavit disclosed by the Government, any expert testimony on this subject would not meet the reliability standards in Rules 702 and 703 of the Federal Rules of Evidence and under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). (Dkt. No. 76 at 3-4; Dkt. No. 99 at 3-4).

In its Responses, the Government acknowledges that it "intends to present testimony . . . concerning data generated by the GPS unit attached to Defendant's ankle which indicates his various locations on September 2, 2014." (Dkt. No. 84 at 2; Dkt. No. 100 at 2). The Government maintains, however, that the testimony Defendant seeks to preclude "is not expert testimony" and that "the reliability of GPS technology is widely accepted." (Dkt. No. 84 at 2; Dkt. No. 100 at 2).

## II. APPLICABLE LEGAL STANDARDS

The disclosure requirements for expert testimony in criminal trials is set forth in Rule 16(a)(1)(G) of the Federal Rules of Criminal Procedure, which states in relevant part:

> At the defendant's request, the government must give to the defendant a written summary of any testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial. . . . The

> summary provided under this subparagraph must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications.

Fed. R. Crim. P. 16(a)(1)(G). Rules 702, 703, and 705 of the Federal Rules of Evidence govern expert testimony.

The requirements of Rule 16(a)(1)(G) do not apply to opinion testimony from lay witnesses, which is governed by Rule 701 of the Federal Rules of Evidence. Under Rule 701:

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:
> (a) rationally based on the witness's perception;
> (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
> (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed. R. Evid. 701. Section (c) of Rule 701 was added in 2000 "to prevent a party from conflating expert and lay opinion testimony thereby conferring an aura of expertise on a witness without satisfying the reliability standard for expert testimony set forth in Rule 702." *Donlin v. Philips Lighting N. Am. Corp.*, 581 F.3d 73, 81 (3d Cir. 2009) (quoting *United States v. Garcia*, 413 F.3d 201, 215 (2d Cir. 2005)) (quotations omitted). In interpreting Rule 701(c), the Third Circuit noted that "lay testimony must result from a process of reasoning familiar in everyday life, as opposed to a process which can be mastered only by specialists in the field." *Id.* (quoting Fed. R. Evid. 701 advisory committee's notes to 2000 amendments) (quotations and brackets omitted). However, the Third Circuit went on to add the following caveat:

> This does not mean that an expert is always necessary whenever the testimony is of a specialized or technical nature. When a lay witness has particularized knowledge by virtue of her experience, she may testify—even if the subject matter is specialized or technical—because the testimony is based upon the layperson's personal knowledge rather than on specialized knowledge within the scope of Rule 702.

*Id.*

4

In *Donlin*, the Third Circuit permitted certain aspects of a lay witness's testimony that were "within her personal knowledge (such as her current and past earnings)," but precluded those aspects of the testimony that "required forward-looking speculation for which she lacked the necessary training" (such as estimating the annual pay raises at her former employer; her estimated pension value; and probability of death). *Id.* at 83. The Third Circuit found that the district court abused its discretion in allowing the witness to opine on these topics "[b]ecause this testimony was of a specialized or technical nature and was not within [the witness's] personal knowledge." *Id.* at 85; *see also United States v. Eady*, 2016 WL 2343212, at *1 (3d Cir. May 4, 2016) ("When testifying about [one's] business, a lay witness's personal knowledge may include 'inferences that he could draw from his perception of a business's records, or facts or data perceived by him in his corporate capacity.'" (quoting *United States v. Polishan*, 336 F.3d 234, 242 (3d Cir. 2003))).

### III. ANALYSIS

Defendant's premise is that the evidence the Government will seek to introduce regarding the GPS data requires an expert witness. From this, Defendant argues that the Government failed to comply with the disclosure requirements and reliability standard for expert opinions, and the evidence, therefore, should be precluded. However, because the evidence regarding the GPS data does not require an expert, Defendant's arguments fail.

In his first Motion, Defendant asserts that an interpretation of the GPS data "is based upon expert technical knowledge and is not within the everyday knowledge of a lay person" and concludes that "[c]learly Jennifer White's testimony [regarding the GPS data] must be defined as 'expert testimony.'" (Dkt. No. 76 at 1-2). In his second Motion, Defendant raises the related argument that the anticipated testimony requires an expert witness because the witness would opine on the accuracy of both GPS data *and* maps. (Dkt. No. 99 at 1). Specifically, Defendant asserts that Mr. Keith's statement in the affidavit that "'the attached maps are an accurate

5

representation of GPS tracking of [Defendant]' . . . is based upon technical knowledge of GPS tracking coordinates and not cartography or mapping, which information is included in the 'attached maps' referenced in Mr. Keith's affidavit." (*Id.*). At bottom, both of Defendant's Motions assume that testimony opining on the accuracy of GPS data, and maps derived from such data, requires an expert witness. This assumption is unfounded.

As the Third Circuit noted in *Donlin*, a lay witness may offer testimony that is "specialized or technical" in nature when the witness "has particularized knowledge by virtue of her experience." 581 F.3d at 81. Thus, although testimony regarding GPS data and maps depicting GPS data may be said to be of a specialized or technical nature, this does not mean that expert testimony is required. To the contrary, a lay witness with sufficient personal experience may testify as to the accuracy of such GPS data. *See, e.g.*, *Espinal–Almeida*, 699 F.3d 588, 612-13 (1st Cir. 2012) ("The issues surrounding the processes employed by the GPS and software, and their accuracy, were not so scientifically or technologically grounded that expert testimony was required to authenticate the evidence, and thus the testimony of [a lay witness], someone knowledgeable, trained, and experienced in analyzing GPS devices, was sufficient to authenticate the GPS data and software generated evidence."); *United States v. Lee*, 339 F. App'x 153, 160-61 (3d Cir. 2009) (holding that a lay witness's use of a GPS program to determine that the location of a crime was within 1,000 feet of a public school did not constitute expert testimony because the witness's "use of a GPS navigation program relie[d] on a tool used in everyday life, and require[d] no specialized training or knowledge"); *Kintzel v. Kleeman*, 2016 WL 695136, at *4-5 (M.D. Pa. Feb. 19, 2016) (finding that a police officer who was called to testify regarding GPS data did not have the "specialized knowledge required of an expert witness" but that "[u]nder the caselaw, this subject matter [GPS data and analysis] does not require scientific, technical or specialized knowledge").

6

Accordingly, the Court rejects the underlying assumption in Defendant's Motions that testimony regarding the accuracy of GPS data, and maps derived from such data, requires an expert witness.

In reaching its conclusion, the Court finds the case of *United States v. Thompson*, 393 F. App'x 852 (3d Cir. 2010) to be analogous. In *Thompson*, two individuals robbed a bank and fled in an automobile with several thousands of dollars. *Id.* at 854. Using a GPS device that had been planted in the money, the police were able to track and ultimately apprehend the individuals, one of whom was the defendant. *Id.* The defendant appealed his conviction, arguing that the district court erred in admitting into evidence a spreadsheet listing the GPS tracking data and a graphical depiction of the GPS data because the exhibits were authenticated by a lay witness who "had no scientific background concerning the functionality of the GPS device." *Id.* at 857-58.[3]

The court in *Thompson*, rejected the defendant's arguments and held that the district court did not err in allowing the lay witness's testimony regarding the GPS data or allowing the lay witness to authenticate the two exhibits. *Id.* at 858. The court noted that although the testimony's subject matter was technical, the testimony was "based upon [the witness's] personal knowledge rather than on specialized knowledge within the scope of Rule 702." *Id.* (quoting *Donlin*, 581 F.3d at 81) (quotations omitted). Specifically, the court observed that the lay witness "was trained in, experienced in, and had verified the functioning of GPS devices" and that "he does demonstrations for prospective clients by conducting live demonstrations of the reliability of the GPS devices,

---

[3] In describing the exhibit containing the "graphical depiction of the [GPS] data," the Court in *Thompson* stated that it involved placing the relevant GPS data on a map: "[The lay witness] further testified that when the [GPS] device is activated, it creates a "bread crumb trail," meaning that a dot is created on a map to depict the device's movements. Each dot has a latitude, longitude, direction, and speed, and each dot is time stamped. This graphical depiction of the [GPS] tracking data was admitted as Government Exhibit 18." 393 Fed. App'x at 857-58. Thus, Defendant's argument at the pretrial conference that *Thompson* involved GPS tracking, but not mapping, lacks merit.

thus affording him a basis for attesting to the reliability of the system." *Id.* at 858. Ultimately, the court concluded that "[b]ecause the opinions and inferences expressed by [the lay witness] were based upon his perceptions, we conclude that the District Court did not abuse its discretion in allowing [the lay witness] to testify concerning the operation of the GPS device." *Id.* at 859.

In sum, Defendant's premise that GPS data and any associated mapping require expert testimony contravenes well-established case law.[4] Accordingly, Defendant's Motion seeking to exclude the Government's witnesses on that basis must fail.

### IV. CONCLUSION

In view of the foregoing, the Court will deny both Defendant's Motion to Preclude Expert Testimony (Dkt. No. 76) and Defendant's Motion to Preclude Expert Testimony of Jeff Keith (Dkt. No. 99).

An appropriate Order accompanies this Memorandum Opinion.

Date: June 1, 2016 _____/s/_____
WILMA A. LEWIS
Chief Judge

---

[4] The Government has represented that Ms. White "is a training specialist and is familiar, through personal experience and observation with the reliability of the GPS unit that was installed on Defendant" (Dkt. No. 84 at 2), and has submitted Mr. Keith's resume, which states, *inter alia*, that he has worked for BI Incorporated for approximately 15 years in various roles regarding GPS tracking units and is currently employed as a supervisor (*see* Dkt. No. 104-1). The Court's ruling herein does not preclude any appropriate objections by Defendant at trial grounded in whether the Government's witnesses actually possess the necessary background and experience to offer the proffered lay opinion testimony.